**Anthony Mallers HEIMAN, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1185S469.**

Supreme Court of Indiana.

Aug. 21, 1987.

Arthur J. O'Donnell, Chicago, Ill. for appellant.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal following conviction by a jury of the offense of armed

robbery, a class B felony, and theft, a class D felony. Appellant received concurrent sentences of 15 years and 2 years respectively.

There are two issues presented for review: (1) whether the trial court erred in denying appellant's pre-trial motion to suppress identification testimony; and (2) whether a separate or independent basis existed to allow direct in-court testimony identifying appellant as the assailant.

These are the facts from the record which tend to support the determination of guilt: On January 4, 1985, in the early morning hours, the Holiday Inn in Warsaw, Indiana was robbed. Cynthia Dixon and Barbara Ringer were working the front desk that morning when a bearded individual wearing a hat and safety goggles over glasses produced a gun and demanded the money from the cash register. Dixon testified the same man had come to the desk earlier and asked for change. That evening, police brought a photo array consisting of seven photographs to Dixon's home. The array contained two pictures of appellant and Dixon selected one of these as the man who robbed the Holiday Inn. Later that night, following appellant's arrest, police showed the photo array to Ringer who identified the same photograph of appellant as the perpetrator. A few weeks prior to trial, Ringer and Dixon were again shown the photo array and both selected appellant's photograph. They were also shown four other photos of appellant and a videotape of his interrogation.

# I

It is asserted that the trial court erred by denying a motion to suppress evidence of pre-trial identifications of appellant by witnesses. In support of the argument it is urged that since the photo array contained two photographs of appellant, it was inherently suggestive, enhancing the possibility of his selection. Further, appellant points out that photographic identification procedures were employed even though he was in custody and available for viewing in a lineup. Appellant also challenges the subsequent viewing of the photo array, four additional photographs of himself and the videotape when he was personally available.

In *Gambill v. State* (1982), Ind., 436 N.E.2d 301, a witness viewed an array of six photographs, two of which were of the defendant but were not of recent origin. The witness made no identification from this array. The following day, the witness was again shown a six photograph array which contained one picture included the day before and a more recent photograph of the defendant. The witness immediately made the identification of the most recent photograph. This procedure was challenged as being unnecessarily and impermissibly suggestive. In response, this court stated:

We do not agree ... that the identification procedures were unnecessarily and impermissibly suggestive.... To the contrary, it appears that there was little, if any, suggestivity in the procedures ... It is inevitable that a witness may know that the police have a suspect when he is asked to view a "line up" or limited photographic array. The purpose of such identification procedures is to have such suspicions confirmed or refuted, and the procedures cannot be criticized so long as they are conducive to witness independence. *Id.* at 303.

In *Hollonquest v. State* (1979), 272 Ind. 380, 398 N.E.2d 655, a witness was shown a thirty picture photo array which contained two pictures of the defendant and he selected both pictures. This court held that the presence of two photographs of the same person does not suggest to a significant degree that the police consider the individual portrayed to be a prime suspect and that this was not impermissibly suggestive.

In order to determine whether evidence of a pre-trial identification should have been excluded, this court looks to the totality of the circumstances to determine whether the identification process was conducted in such a way that it created a substantial likelihood of irreparable misidentification. *Gillie v. State* (1984), Ind., 465 N.E.2d 1380.

While having two photographs of appellant was unnecessary, one was taken in 1978 and the other in 1981 and appellant's appearance is significantly different in the two pictures. Police were likely unaware when they prepared the array which photograph most resembled appellant's appearance at the time of the crime. Since neither witness identified appellant from the older photograph, there is little doubt that neither realized there were two pictures present. The rest of the pictures were of men approximately the same age and whose descriptions matched that given by Dixon and Ringer. Under the totality of the circumstances, the identification process promoted witness independence and did not create a risk of misidentification.

As to showing the array to Ringer following appellant's arrest instead of conducting a line-up, this method does not make her identification any less reliable, nor does the subsequent viewing of the four additional pictures of appellant and the videotape affect the original identifications.

## II

Appellant questions whether Dixon and Ringer had an independent basis for an in-court identification. He suggests that the viewing of the original photo array two times, the examination of four additional pictures of appellant and the viewing of the videotape of his questioning by police make it questionable whether there was a sufficient basis for their direct in-court identification testimony.

"Notwithstanding the fact an unnecessarily suggestive pretrial confrontation has occured, an in-court identification is permissible if the state satisfies its burden to establish by "clear and convincing evidence" that, independent of the unconstitutional confrontation, an independent basis for the witness's in-court identification exists. *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; *Simmons v. United States* (1968), 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; *Swope v. State* (1975), 263 Ind. 148, 325 N.E.2d 193.

*Remsen v. State* (1981), Ind., 428 N.E.2d 241.

The factors to be considered are the witnesses' opportunity to view the criminal when the crime was committed, their degree of attention at the time, the accuracy of their prior descriptions, their level of certainty in the pre-trial identification and the length of time between the crime and the identification. *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401.

Both Dixon and Ringer had the opportunity to view appellant at close range under good lighting conditions, both gave an accurate description and both independently and unequivocally identified appellant from the original photo array on the day of the crime. The later showing of four additional photographs and the videotape were unduly suggestive but the witnesses still had a sufficient independent basis from which they could make a direct in-court identification of appellant.

The convictions are affirmed.

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.